**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ADAR BAYS, LLC

                              Plaintiff,

          v.                                          2015-Civil Action No: _____

PUGET TECHNOLOGIES, INC. and
HERMANN C. BURCKHARDT

                              Defendant.

## COMPLAINT AND JURY DEMAND

1.      This is an action for securities fraud under federal law and supplemental New York state law claims for breach of contract, tortious interference and defamation.

## PARTIES

2.      Plaintiff ADAR BAYS, LLC ("ADAR") is a limited liability company duly organized under the laws of the State of Florida having a principal place of business located at 3411 Indian Creek Drive, Ste. 403, Miami Beach, FL 33140.

3.      Upon information and belief, Defendant PUGET TECHNOLOGIES, INC. ("PUGE") is a corporation organized and existing under the laws of the State of Nevada having its principal place of business located at 801 Brickell Avenue, Suite 900, Miami, Florida 33131.   PUGET TECHNOLOGIES, INC. is traded publicly under the symbol "PUGE."

4.      Upon information and belief, Defendant HERMANN C. BURCKHARDT ("Burckhardt") is an individual residing at 9796 NW 51st Terrace,

Miami, Florida 33178.  Burckhardt serves as PUGE President and CEO, and is one of only two directors, officers, and/or employees of PUGE.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that the action involves a federal claim for securities fraud, and otherwise pursuant to 28 U.S.C. §1332(a)(2) in that the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.    This Court has supplemental jurisdiction of Plaintiff's various state law claims pursuant to 28 U.S.C. section 1367(a).

6.      Venue is proper in this District pursuant to 27 U.S.C. §1391(a), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property which is subject of this action is situated; and New York judicial districts are the exclusive venue where the parties agreed that the claims hereafter set forth can be brought.

## FACTS

### The Note

7.      On or about January 30, 2015, after arm's-length negotiations, PUGE duly issued a $75,000 8% Convertible Redeemable Promissory Notes to ADAR  (the "Note").  A true and correct copy of the Note is attached hereto as Exhibit A.  The claims herein arise from PUGE's willful breaches of its obligations pursuant to the terms of the Note.

8.      The Note provides that ADAR, at any time after execution, has the right to convert all or part of the Note into shares of PUGE common stock (the "Common Stock").  Specifically, §4(a) of the Note provides in pertinent part:

> The Holder of this Note is entitled, at its option, at any time, to convert all or any amount of the principal face amount of this Note then outstanding into shares of the Company's common stock (the "Common Stock")…

Ex. A at 2, paragraph 4(a).

9.      The mechanics of converting the Note required ADAR to submit a Notice of Conversion to PUGE.  Accordingly, §3 of the Note provides, in pertinent part:

> Any Holder of this Note electing to exercise the right of conversion set forth in Section 4(a) hereof, in addition to the requirements set forth in Section 4(a), and any prospective transferee of this Note, also is required to give the Company written confirmation that this Note is being converted ("Notice of Conversion") in the form annexed hereto as Exhibit A.

10.     As §4(a) of the Note dictates, the price at which the Note was convertible (the "Conversion Price") was to be determined "for each share of Common Stock to be equal to 57.5% of the **average of the three lowest closing bid prices** of the Common Stock as reported on the National Quotations Bureau OTCQB exchange which the Company's shares are traded . . . for the ***fifteen*** prior trading days including the day upon which a Notice of Conversion is received by the Company…" (emphasis in original).

11.     Further, under §4(a), Notices of Conversion are to be "effectuated by the Company [PUGE] delivering the shares of Common Stock to the Holder within 3 business of receipt by the Company of the Notice of Conversion."

12.     In order to ensure that sufficient shares are available for conversion, §12 of the Note provides that "[t]he Company shall issue irrevocable transfer agent instructions reserving 6,000,000 shares of its Common Stock for conversion under this Note (the "Share Reserve")."  Further, the Note requires that, "[t]he Company

should at all times reserve a minimum of four times the amount of shares required if the Note would be fully converted.  The Holder [ADAR] may reasonably request increases from time to time to reserve such amounts."

13.     Concurrently with the Note, PUGE issued a letter to its transfer agent ("TA"), Direct Transfer, LLC ("Direct Transfer"), noting that Direct Transfer was, and is:

> Irrevocably authorized and instructed to reserve a sufficient number of shares of common stock ("Common Stock") of the Company (initially, 6,000,000 shares for the Note) for issuance upon full conversion of the Note in accordance with the terms thereof (the "Reserved Shares"). The Holder shall have the right to periodically request that the number of Reserved Shares be increased so that the number of Reserved Shares at least equals 400% of the number of shares of the Company common stock issuable upon conversion of the Note.
>
> The ability to convert the Note in a timely manner is a material obligation of the Company pursuant to the Note.  Your firm is hereby irrevocably authorized and instructed to issue shares of Common Stock of the Company (without any restrictive legend) to the Holder without any further action or confirmation by the Company…

PUGE's Letter to Direct Transfer is attached as Exhibit B.

14.     The conversion feature of the Note is a material term.  ADAR was unwilling to lend money to PUGE simply to earn an interest rate return on a note. Investment in PUGE was and remains exceedingly risky. Therefore, ADAR was only willing to purchase the Note if it could earn a return commensurate with the risk.  ADAR's ability to obtain stock at a discount to the market price and resell it on the open market provided ADAR with an opportunity to earn such a return.  Any failure by PUGE to honor Conversion Notices, therefore, deprives ADAR of the essential benefit for which it negotiated, and for which it purchased, the Note.

## Numerous Conversions Honored Without Incident

15.     Following execution of the Note, PUGE, at least initially, acted in full compliance with the terms of the first Note, accepting the benefits of ADAR's investment and honoring several ADAR conversions of PUGE stock thereunder.

16.     After acquiring the Note, on or about August 3, 2015, ADAR duly submitted a Notice of Conversion to convert $5,000 of the balance of the Note into 261,131 shares of PUGE Common Stock, leaving a principal balance of $69,000.00, plus interest accruing thereupon, on the Note.  This conversion was honored and the requisite shares were delivered accordingly.   The August 3, 2015 Notice of Conversion is attached hereto as Exhibit C.

17.     On or about August 20, 2015 ADAR duly submitted a Notice of Conversion to convert $6,000 of the balance of the Note into 1,897,233 shares of PUGE Common Stock, leaving a principal balance of $63,000, plus interest accruing thereupon, on the Note.  This conversion was honored and the requisite shares were delivered accordingly.  The August 30, 2015 Notice of Conversion is attached hereto as Exhibit D.

18.     On or about September 8, 2015 ADAR duly submitted a Notice of Conversion to convert $10,000 of the balance of the Note into 3,840,580 shares of PUGE Common Stock, leaving a principal balance of $53,000, plus interest accruing thereupon, on the Note.  This conversion was honored and the requisite shares were delivered accordingly. The September 8, 2015 Notice of Conversion is attached hereto as Exhibit E.

## PUGET's Conduct Runs Afoul of the Terms of the Note

19.     On or about September 9, 2015, and upon concluding its September 8, 2015 Conversion, ADAR, acting within the bounds of the Note's provisions, requested in writing that Direct Transfer increase the number of shares in reserve, stating in pertinent part:

> You had previously reserved shares for issuance under the Note pursuant to the terms of irrevocable instructions dated January 30, 2015 (the "TA Letter").  As a result of the stock price falling from the time Adar Bays, LLC entered into a financing agreement with the company, the current reserve at the transfer agent must be amended. The TA letter provides that the reserve may be increased by written instructions of the Company and the Investor.  This letter is to serve as instruction to increase the reserve under the TA Letter by an additional 77,391,304 shares.  All other provisions of the TA Letter remain unchanged.

The September 9, 2015 TA Reserve Increase Letter is attached hereto as Exhibit F.

20.     No response to the September 9, 2015 TA Reserve Increase Letter was ever received. As of the date of filing, PUGE has failed to counter-sign this letter. In omitting to do so, PUGE has failed to fulfill its obligations under the Note.

21.     On or about September 16, 2015, PUGE sent a proposal letter ("Proposal") to its note holders, seeking to augment the terms of its securitized notes.  PUGE's September 16, 2015 Proposal is attached hereto as Exhibit G.

22.     In addition to admonishing the performance of PUGE's former CEO, Larson Elmore, and touting *potential* new hires, the Proposal sought to require ADAR, and similarly-situated note holders, to: (i) cease converting any portion of any Note for a period of six (6) months; (ii) permit the respective notes to be paid down monthly at the same interest rate with a 5 year amortization schedule; (iii)

permit PUGE, in PUGE's sole discretion, to increase the moratorium on conversion for an additional three months should PUGE feel more time would be PUGE stock for a period of six months, if the respective note holder be deemed a "major shareholder," i.e., those owning 5% or more of the outstanding stock; amongst other requests. Exhibit G.

23.     On or about October 8, 2015, seeking to assist PUGE in remedying its failure to authorize the increase of the Share Reserve, ADAR dispatched an email to PUGE, stating therein: "[w]e have a balance of $53,400.00 on the convertible note with no shares left in reserve.  Please sign the attached [TA Reserve Increase Letter] so we can get the reserve in place with the TA.  Thanks."  The October 8, 2015 email is attached hereto as Exhibit H.

24.     On or about October 12, 2015, ADAR reminded PUGE of its continued failure to replenish its Share Reserve under the Note. The October 12, 2015 email is attached hereto as Exhibit I.

25.     On or about October 14, 2015, ADAR again duly submitted a Notice of Conversion to PUGE to convert another portion of the Note's principal and interest into shares of Common Stock.  Specifically, ADAR elected to convert $7,000 of the Note into 4,197,901 shares, based on a conversion price of .0016675.  The October 14, 2015 Notice of Conversion is attached hereto as Exhibit J.

26.     In connection with this Conversion Notice, and pursuant to the terms of the Note, ADAR provided Direct Transfer an opinion letter from counsel concerning Share Issuance under Rule 144.  The October 14, 2015 opinion letter is attached hereto as Exhibit K.

27.     Without legitimate excuse or justification, PUGE refused to deliver to ADAR the shares of Common Stock that it was obligated to deliver upon receiving such Conversion Notice.

### PUGE's Misrepresentations of Fact

28.     On or about October 16, 2015, having failed to respond to ADAR's October 14, 2015 Conversion Notice, new PUGE President and CEO, Hermann Burckhardt emailed ADAR a copy of a "Civil Theft Letter," accusing ADAR of engaging in a scheme to defraud and theft from PUGE.  PUGE's "Civil Theft Letter" is attached hereto as Exhibit L.  PUGE's allegations are patently false.

29.     The Civil Theft Letter alleges that ADAR contracted for loans that are "clearly fraudulent."   However, ADAR furnished money to PUGE under a negotiated, arms-length promissory note, duly executed by PUGE.

30.     Furthermore, in negotiating the Note, the parties were each represented by sophisticated counsel.

31.     The Civil Theft Letter further alleges that lenders "arranged a default on inception."  But ADAR was in no position to do so as it had no control over PUGE at any time.

32.     Additionally, the Civil Threat Letter alleges that: "the lender was paid a huge commission."   Yet, the Civil Threat Letter neither specifies what commission, if any, was paid, nor does it articulate why this alleged commission was "huge."  In any event, no such commission was ever tendered.

33.      The Civil Threat Letter further alleges that: "ADAR is acting in concert with New Venture Attorneys, using questionable and identical attorney

opinions from New Venture Attorneys." Upon information and belief, the Civil Threat Letter's reference to "New Venture Attorneys" refers to Tomer Tal, who has represented the lender New Venture P.C. But ADAR never acted in concert with Tomer Tal concerning PUGE.

34.     On October 20, 2015, PUGE announced in its public 8-K filing that ADAR was the subject of an "investigation" and attached the text of the Civil Threat Letter. PUGE's October 20, 2015 8K filing is attached as Exhibit M.

35.     The principals of ADAR have been well-known in the investment and business community for at least 15 years. ADAR is an accredited investor since 2014. ADAR and its principals have been in the business of providing publicly-held corporations short-term loans and have developed an established reputation among lenders and publicly-held corporations alike. The reputation of short-term lenders, including ADAR, is important insofar as poorly-reputed short-term lenders are not provided the same quantity and quality commercial opportunities as well-reputed short-term lenders. Upon information and belief, PUGE and/or Hermann Burckhardt's publicly disseminated and false accusations about ADAR have harmed ADAR's reputation, including its reputation in the community for stellar management, among lenders and publicly-held corporations alike.

36.     This is not the first time Mr. Burckhardt has involved himself in making false statements to a governmental agency. In 1985, the National Association of Securities Dealers fined and censured Mr. Burckhardt for multiple violations of SEC rules with respect to broker-dealer annual reporting, audit and notification requirements. Among the violations, Mr. Burckhardt filed inaccurate Financial and Operational Combined Uniform Single Reports ("FOCUS"). The FOCUS reports are expected to be filed monthly and quarterly and provide an update to the Firm's annual audited financial statement. Mr. Burckhardt paid a

small amount of the fine (less than 10%) then made no additional payments.  As a result, his registration as a broker-dealer was revoked.

37.     Upon information and belief, PUGE has but two directors, investors, and/or employees, including Mr. Burckhardt.[1]

38.     To date, PUGE remains in default and has yet to honor ADAR's October 14, 2015 conversion.

## PUGE's Defaults

39.     Based on the foregoing events, PUGE's failure to honor ADAR's October 14, 2015 Notice of Conversion has effectively given rise to an "Event of Default" pursuant to the terms the Note. In addition thereto, PUGE's subsequent conduct has caused no fewer than four (4) supplemental "Events of Default" to occur.

40.     With regard to the October 14, 2015 Notice of Conversion, PUGE defaulted under §8(k), which states that an "Event of Default" shall occur if "the Company shall not deliver to the Holder the Common Stock pursuant to paragraph 4 herein without restrictive legend within 3 business days of its receipt of a Notice of Conversion."  Ex. A at 5.

41.     As PUGE did not deliver the shares within three (3) business days PUGE's receipt of the Notice of Conversion, and this failure was not cured within five (5) business days, PUGE is and remains in default under §8(k).  Ex. A at 5.

---

[1] In addition to Mr. Burckhardt, Thomas Jaspers serves as the company's Chief Financial Officer (CFO).

42.     Second, PUGE is in default under §8(l), which provides that an "Event of Default" shall transpire if "the Company shall not replenish the reserve set forth in Section 12 within 3 business days of the request of the Holder.  Ex. A at 5.

43.     Because ADAR requested an increase in the Reserve on October 8, 2015, and again on October 12, 2015, neither of which was honored by PUGE, PUGE is in default under §8(l).   Ex. A at 5.

44.     Third, by failing to facilitate ADAR's October 14, 2015 Notice of Conversion, PUGE effectively rendered itself in default of §8(b) of the Note.  Ex. A at 4.  Section 8(b) provides that an "Event of Default" shall occur if, "[a]ny of the representations or warranties made by the Company herein or in any certificate or financial or other written statements heretofore or hereafter furnished by or on behalf of the Company in connection with the execution and delivery of this Note, or the Securities Purchase Agreement under which this note was issued shall be false or misleading in any respect."  Ex. A. at 4.

45.     Under §4 of the Note, PUGE agreed that the Holder, ADAR, would be entitled to convert all or any amount of the principal face amount of the Note then outstanding into shares of the Company's Common Stock *at its option*.  Ex. A at 5.  By neglecting to effectuate ADAR's conversion, PUGE has provided to ADAR an irrevocable option to convert any or all of the remaining principal value of the Note.

46.      PUGE is further in default under §8(d) of the Note, which states, in pertinent part, that an Event of Default shall occur if: "[t]he Company shall…(2) admit in writing its inability to pay its debts generally as they mature..."

47.     In the PUGE Proposal, PUGE asserted, "As a result of the previous setbacks we lacked the ability and vision to move ahead," and, with respect to the concessions PUGE was seeking, that, "[t]he Company needs you to grant us the

following terms to move forward."  In closing, the Proposal notes that, "[w]hat we are looking at if we cannot come to an agreement is a bidding war with the stock being so affected that it would probably make our business plan impractical."  The Proposal itself, conveyed to ADAR in writing, demonstrates PUGE is unable to pay its debts as they mature.

48.    PUGE further alludes to its inability to pay its debts as they become due in its September 23, 2015 filing with the Security and Exchange Commission (SEC)("Form 10-QA").   In PUGE's Form 10-QA, the company notes that, "the Company has incurred losses since inception resulting in an accumulated deficit of $1,505,530 as of July 31, 2015 and further losses are anticipated in the development of its business raising substantial doubt about the Company's ability to continue as a going concern." PUGE's September 23, 2015 10-QA is attached hereto as Exhibit N.

49.    Finally, PUGE is in default under §8(c), which mandates that an "Event of Default" shall occur if "the Company shall fail to perform or observe, in any respect, any covenant, term, provision, condition, agreement or obligation of the Company under this Note or any other note issued to the Holder."

50.    Despite the fact that, under §6 of the Note PUGE expressly waived notice, ADAR has on multiple occasions reminded PUGE of its obligations and has provided it with notice of PUGE's failure to increase the shares in its Reserve and its failure to honor ADAR's October 14, 2015 Notice of Conversion.

51.    At no point has ADAR's ever, whether formally or informally, in writing or orally, waived PUGE's defaults.

52.    Section 8 of the Note outlines the negotiated-for and agreed-upon remedies for the differing Events of Default. First, §8 mandates that, "[u]pon an

Event of Default, interest shall accrue at a default interest rate of 24% per annum, or if such rate is usurious or not permitted by current law, then at the highest rate of interest permitted by law."

53.     Moreover, PUGE's breaches trigger default payments of "$250 per day the shares are not issued beginning on the 4th day after the conversion notice was delivered to the Company."  Beginning on the 10th day that the shares are not issued, this payment, "shall increase to $500 per day."  Ex. A. at 5.

54.     Due to PUGE's persistent and willful failure to remedy its various breaches, as of filing the instant action, default interest has been accruing at a rate of 24% since September 9, 2015, or 62 days to date of filing (11/10).  Further, default payments have accrued to $10,250, and continue to escalate daily.

55.     The default payments under the Note were reasonable at the time of entering the contract and are not grossly disproportionate to the conceivable losses that could occur from a breach.  First, stocks such as PUGE's are volatile, making the timing of conversion and sale of the stock on the open market important. Second, the ability to convert at a discount and sell on the open market, particularly in an upswing in the stock price, afforded ADAR with an opportunity to make profits well beyond the amount daily default payments.

## Irreparable Harm

56.     ADAR has been, and continues to be, irreparably harmed by PUGE's failure to honor the Notice of Conversion.

57.     First, damages from PUGE's failure to deliver the shares are inherently uncertain and difficult to calculate.   Since the parties entered in the Note in January 2015, PUGE's Stock price has ranged from $0.1 per share to just

$0.0077 per share.  Thus, the timing of conversions and sale of stock would be essential to the determination of damages.  Because it is impossible to discern with any accuracy precisely when ADAR would have sold the converted shares, and how many it would sell had the conversion been honored, calculating its losses is impossible.  PUGE's stock chart is attached hereto as Exhibit O.

58.     Next, PUGE is nearing insolvency, if not insolvent already.  According to PUGE's Form 10-QA (Ex. N), the company's most recent Quarterly Report filed with the Securities and Exchange Commission, PUGE is carrying over $1,650,000 million in liabilities (up from $951,229 in October 2014), compared to a mere $327,119 in total assets.  Further, PUGE's cash flows from operations evidence a net loss of $630,554 for the nine months ended July 31, 2015 and its income from operations has the company in the red for a total of ($284,434).  Finally, and most glaringly, at current, PUGE maintains a total stockholders' deficit of $838,655.

59.     PUGE's Board statements contained in the Form 10-QA reiterate this financial hardship, stating:

> The ability to continue as a going concern is dependent upon the Company generating profitable operations in the future and/or to obtain the necessary financing to meet its obligations and repay its liabilities arising from normal business operations when they come due.  Management intends to finance operating costs over the next twelve months with existing cash on hand and loans from directors or third parties and or private placement of common stock.

60.     As such, without injunctive relief, PUGE is unlikely to satisfy any monetary judgment and ADAR will suffer irreparable harm.

## Costs, Expenses, and Attorneys' Fees

61.     The Note expressly provides that ADAR is entitled to attorneys' fees and other costs in the event of any action to enforce the terms of the Note.

62.     First, §7 of the Note states, "[t]he Company agrees to pay all costs and expenses, including reasonable attorneys' fees and expenses, which may be incurred by the Holder in collecting any amount due under this Note."

63.     Next, §8 states, "[i]f the Holder shall commence an action or proceeding to enforce any provisions of this Note, including, without limitation, engaging and attorney, then, if the Holder prevails in such action, the Holder shall be reimbursed by the Company for its attorneys' fees and other costs and expenses incurred in the investigation, preparation and prosecution of such action or proceeding."

## First Claim For Relief
### (FAILURE TO DELIVER SHARES: PERMANENT INJUNCTIVE RELIEF)

64.     ADAR realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 63 of this Complaint as if fully set forth herein.

65.     Pursuant to the agreements between them, PUGE is obligated to deliver 4,197,580 shares of its Common Stock, along with the necessary resolutions and acceptance of the legal opinions furnished by ADAR, sufficient to enable ADAR to sell the shares publicly without restriction.

66.     Despite its obligation to do so, PUGE has failed and refused to deliver said shares of stock to ADAR.

67.     As a result of such refusal by PUGE, ADAR has suffered damages.

68.     ADAR has no adequate remedy at law.

69.     In the absence of injunctive relief, ADAR will suffer irreparable harm.

70.     ADAR requests, therefore, that the Court enter and order requiring PUGE to deliver immediately to ADAR 4,197,580 shares of its Common Stock, along with the necessary resolutions and acceptance of the legal opinions furnished by ADAR, sufficient to enable ADAR to sell the shares publicly without restriction.

## **Second Claim For Relief**
### (FAILURE TO DELIVER SHARES: DAMAGES)

71.     ADAR realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 70 of this Complaint as if fully set forth herein.

72.     ADAR's conduct constitutes a breach of, and default under the terms of the Note.

73.     ADAR's breach and default are governed by New York law under the terms of the Note.

74.     ADAR, therefore, is entitled to an award of damages in an amount to be determined at trial, but no less than seventy-five thousand dollars ($75,000).

## **Third Claim For Relief**
### (CONVERSION: PERMANENT INJUNCTION)

75.     ADAR realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 74 of this Complaint as if fully set forth herein.

76.     ADAR has a right to possession of the shares that PUGE has refused to deliver which right is greater than PUGE's right to possess those shares.

77.     PUGE has wrongfully interfered with ADAR's right to possess those shares which interference constituted conversion of those shares by PUGE.

78.     As a result of PUGE's wrongful conversion of the shares, ADAR has been damaged.

79.     ADAR has no adequate remedy at law.

80.     ADAR requests, therefore, that the Court enter an order requiring PUGE to deliver immediately to ADAR 4,197,580 shares of its Common Stock, along with the necessary resolutions and acceptance of the legal opinions furnished by ADAR, sufficient to enable ADAR to sell the shares publicly without restriction.

### Fourth Claim For Relief
(CONVERSION: DAMAGES)

81.     ADAR realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 80 of this Complaint as if fully set forth herein.

82.     ADAR, therefore, is entitled to an award of damages in an amount to be determined at trial, but not less than seventy-five thousand dollars ($75,000).

## Fifth Claim For Relief
(COSTS, EXPENSES & ATTORNEYS' FEES)

83.    ADAR realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 82 of this Complaint as if fully set forth herein.

84.    In accordance with §§7 and 8 of the agreement between the parties, PUGE agreed to pay all costs and expenses, including reasonable attorneys' fees and expenses, incurred by ADAR in collecting any amount under the Note.

85.    Therefore, ADAR is entitled to an award against PUGE for costs and expenses incurred in the prosecution of this lawsuit, including reasonable legal fees.

## Sixth Claim For Relief
(TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

86.    ADAR realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 85 of this Complaint as if fully set forth herein.

87.    ADAR's business, which consists of providing loans to distressed public companies, has been harmed by the baseless allegations of PUGE in its Civil Threat Letter.

88.    PUGE has committed culpable conduct by making accusations of fraud and theft and payment of improper commissions with at least reckless disregard of the truth.

89.    PUGE made its accusations public by filing its Civil Threat Letter as part of its Form 8K submission to the (SEC).  Such filings are publicly available

online through the SEC's heavily-trafficked Edgar website (URL:www.sec.gov/edgar/searchedgar/companysearch.html).

90.     Hermann Burckhardt exercises complete dominion and control over PUGE, and has caused PUGE to engage in a course of deceptive conduct, including causing PUGE to make false public accusations about Plaintiff and other lenders to the detriment of its shareholders, and for the purpose of benefiting himself individually.

91.     PUGE made, or was caused to make, its false allegations with the purpose of increasing its own stock price and personally benefiting Hermann Burckhardt.

92.     ADAR has suffered substantial damages as a result of PUGET and Mr. Burckhardt's conduct.

## Seventh Claim For Relief
### (SECURITIES FRAUD)

93.     ADAR realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 91 of this Complaint as if fully set forth herein.

94.     PUGE's false allegations and omissions in its Civil Theft Letter were material in that a reasonable shareholder would consider them important in deciding how to vote.

95.     Hermann Burckhardt's conduct constitutes a violation of fiduciary duty owed to PUGE.

96.     Burckhardt's conduct has harmed PUGE by substantially increasing PUGE's credit risk in the eyes of lending institutions.

97.     ADAR has standing to sue derivatively as a shareholder of PUGE following its conversions.

98.     ADAR has suffered substantial damages as a result of PUGE's conduct.

## Eighth Claim For Relief
### (PIERCING THE CORPORATE VEIL)

99.     ADAR realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 98 of this Complaint as if fully set forth herein.

100.    Mr. Burckhardt recently caused PUGE to sign an employment contract for a 5 year term whereby Mr. Burckhardt will receive an excessive compensation of $8,000 per month for the first six months of his employment to a maximum of $15,000 per month for the last three years of the contract.

101.    Mr. Burckhardt has admitted on a number of occasions to inadequate capitalization of PUGE, a function of Mr. Burckhardt's mismanagement of its assets.

102.    Mr. Burckhardt's manages PUGE as an alter ego of himself personally.

103.    ADAR has suffered substantial damages as a result of PUGE's conduct.

104.    Therefore, ADAR is entitled to pierce the corporate veil, and allowing damages for Mr. Burckhardt's deceptive conduct to be paid from Mr. Burckhardt personally.

## Ninth Claim For Relief
(DEFAMATION)

105.    ADAR realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 104 of this Complaint as if fully set forth herein.

106.    ADAR is not a public figure.

107.    Mr. Burckhardt and PUGE's statements in its published Civil Theft Letter were false or at least made in reckless disregard of the truth, and were otherwise grossly irresponsible in that the statements were made without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties.

108.    ADAR has suffered substantial damages as a result of PUGET's conduct.

## Prayer For Relief

**WHEREFORE**, Plaintiff ADAR BAYS, LLC seeks judgment against Defendant PUGET TECHNOLOGIES, INC. as follows:

i.    On the First and Third Claims for Relief, ADAR requests an order requiring PUGE to immediately deliver to ADAR 4,197,580 shares of its Common Stock, along with the necessary resolutions and acceptance of the legal opinions

furnished by ADAR, sufficient to enable ADAR to sell the shares publicly without restriction; and

    ii.    On the First Claim for Relief ADAR further requests an order requiring PUGE to increase the reserves of its Common Stock by an additional 77,391,304 shares; and

    iii.    On all Claims for Relief, an order requiring PUGE to take all necessary steps to increase the authorized shares of PUGE so as to comply fully with the terms of the Note;

    iv.    On all Claims for Relief, for damages in an amount to be determined, but not less than seventy-five thousand dollars ($75,000); and

    v.    On the Fifth Claim for Relief for an award of ADAR's costs and expenses in prosecuting this action, including reasonable legal fees;

    vi.    On the Sixth and Ninth Claims for Relief, the issuance of an injunction requiring PUGE to withdraw its October 20, 2015 8K filing and to refrain from further interference with ADAR's prospective economic advantage and further requiring PUGE to file a statement with the SEC that that Court has found PUGE had made misrepresentations of fact in its October 20, 2015 8K filing order and required PUGE to withdraw said filing on that basis; and

    vii.    On the Eighth Claim for Relief, an order allowing Mr. Burckhardt to be held personally liable for all acts of self-dealing and violation of fiduciary duty to PUGE;

    viii.    On all Claims for Relief, for interest, attorneys' fees and the costs and disbursements of this action; and

ix.     For such other further relief as the Court may deem just, proper, and in the interest of justice.

## JURY DEMAND

Plaintiff demands a trial by jury in this matter.

Dated:      New York, New York
            November 10, 2015

RESPECTFULLY SUBMITTED,
GARSON, SEGAL,
STEINMETZ, FLADGATE LLP
ATTORNEYS FOR PLAINTIFF

BY: _____
MICHAEL STEINMETZ (MS-3164)
KEVIN MURPHY (KM-2370)
164 WEST 25TH STREET
SUITE 11R
NEW YORK, NY 10001
TELEPHONE: (212) 380-3623
FACSIMILE: (347) 537-4540
EMAIL: MS@GS2LAW.COM
KM@ GS2LAW.COM