**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ADAR BAYS, LLC<br><br>                              Plaintiff,<br><br>        v.<br><br>PUGET TECHNOLOGIES, INC., and<br>HERMANN C. BURCKHARDT.<br><br>                              Defendants. | **Civil Action No. 1:15-cv-08860-RA** |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**GARSON, SÉGAL, STEINMETZ, FLADGATE LLP**
Michael Steinmetz
Kevin Murphy
164 West 25th Street
Suite 11R
New York, NY 10001
(P): (212) 380 – 3623
(F): (347) 537 – 4540
*Attorneys For Plaintiff*

TABLE OF CONTENTS

Page(s)

**PRELIMINARY STATEMENT** ................................................................................2

**STATEMENT OF FACTS** ....................................................................................3

**ARGUMENT** .................................................................................................5

    **I.** THE APPLICABLE STANDARDS ON A MOTION TO DISMISS ...........................5

        **A.** Standard of Review on a Rule 12(b)(2) Motion .................................5

        **B.** Standard of Review on a Rule 12(b)(6) Motion .................................6

        **C.** Rule 8's Permissive Standards Apply to ADAR's Claims for Control Liability, Injunctive Relief, Conversion, Tortious Interference, and Defamation ...........7

        **D.** Rule 9(b) and Paragraph (b) of the PSLRA Apply Only to ADAR's Rule 10b-5 Claim ................................................................................8

    **II.** THE FAC ALLEGES A LEGALLY SUFFICIENT BASIS TO ASSERT JURISDICTION OVER DEFENDANTS BURCKHARDT AND PUGE .................10

        **A.** Personal Jurisdiction in a Federal Question Case Extends to the Limit of the Due Process Clause of the Fifth Amendment....................................10

        **B.** Burckhardt is Subject to this Court's Jurisdiction Pursuant to the Exchange Act ...........................................................................................10

            **1.** The minimum contacts test is satisfied ....................................11

            **2.** The reasonableness test is also satisfied. .................................13

        **C.** PUGE is Specifically Covered by New York's Long-Arm Statute, CPLR 302(a) .....................................................................................15

        **D.** The Extension of Jurisdiction over Burckhardt Does Not Offend Traditional Notions of Fair Play ........................................................................16

**III.** ADAR HAS MET ITS BURDEN UNDER RULE 9b OF THE FEDERAL RULES OF CIVIL PROCEDURE WITH RESPECT TO ITS CLAIM OF SECURITIES FRAUD ................................................................................................................ 16

**IV.** PLAINTIFF'S REMAINING CAUSES OF ACTION ARE ADEQUATELY PLED ..................................................................................................................... 18

    **A.** Each of Plaintiff's Claims is Fully Supported by the Facts ........................... 18

    **B.** The FAC Adequately States a Claim for Tortious Interference with Prospective Economic Advantage ................................................................. 20

    **C.** The FAC Adequately States a Claim for Piercing the Corporate Veil ........... 22

    **D.** The FAC Adequately States a Claim for Defamation .................................... 24

**CONCLUSION** ........................................................................................................... **25**

<u>T</u><u>ABLE OF</u> <u>A</u><u>UTHORITIES</u>

Cases                                                                                                    Page(s)

*Accordia Northeast, Inc. v. Thesseus Int'l Asset Fund,*
205 F. Supp. 2d 176 (S.D.N.Y. 2002) ................................................................ 23

*Angel v. Bullington,*
330 U.S. 183 (1947) ........................................................................................ 10

*In re AOL Time Warner, Inc. Secs.,*
381 F. Supp. 2d 192 (S.D.N.Y. 2004) ............................................................... 18

*Ashcroft v. Iqbal,*
556 U.S. 662, 679 (2009) ................................................................................... 7

*ATSI Comm., Inc. v. The Shaar Fund, Ltd.,*
No. 02 Civ. 8726 (LAK), 2004 U.S. Dist. LEXIS 7411
(S.D.N.Y. April 28, 2004) ................................................................................. 10

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
305 F.3d 120 (2d. Cir. 2002) ................................................................. 13, 14, 15

*Bell Atlantic v. Twombly,*
550 U.S. 544, 572, 127 S. Ct. 1955 (U.S. 2007) ........................................... 7, 20

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462, 472 (1985) ....................................................................... 11, 16

*Carvel Corp. v. Noonan,*
3 N.Y.3d 182 (2004) ........................................................................................ 21

*Chambers v. Time Warner, Inc.,*
282 F.3d 147, 152 (2d Cir. 2002) ...................................................................... 6

*Cromer Fin. V. Berger.,*
137 F. Supp. 2d 452 ........................................................................................ 14

*Curanaj v. Cordone,*
10-CV-5689 (ER), 2012 U.S. Dist. LEXIS 135101 (S.D.N.Y Sept. 19, 2012) .. 19

*Derenis v. Coopers & Lybrand Chartered Accountants.,*
930 F. Supp. 1003 (D.N.J. 1996) ...................................................................... 13

*D.H. Blair & Co. v. Gottdiener,*
462 F.3d 95 (2d Cir. 2006) ................................................................... 15

*Dist. Council No. 9 v. APC Painting, Inc.,*
272 F. Supp. 2d 229 (S.D.N.Y. 2003) ............................................... 23

*Ernst & Ernst v. Hochfelder,*
425 U.S. 185, 193 n. 17 (1976) ........................................................... 9

*Grunblatt v. Unumprovident Corp.,*
270 F. Supp. 2d 346 (E.D.N.Y. 2003) ............................................. 22

*Helicopteros Nacionales de Colombia S.A. v. Hall,*
466 U.S. 408 (1984) .................................................................. 11, 24

*In re Initial Public Offering Litig.,*
241 F. Supp. 2d 201, 332 (S.D.N.Y. 2003) ................................ 7, 8, 9

*Int'l Acad. of Bus. & Fin. Mgmt. v. Mentz,*
12-CV-00463, 2013 U.S. Dist. LEXIS 7714 (D. Col. Jan. 18, 2013) ......... 19, 20

*JSC Foreign Econ. Ass'n Technostroyexport v. Int' Dev. & Trade Servs., Inc.,*
295 F. Supp. 2d 366, 379 (S.D.N.Y. 2003) ................................ 22, 23

*Landry v. Price Waterhouse Chartered Accountants,*
715 F. Supp. 98, 102 (S.D.N.Y. 1989) ............................................. 13

*Lentell v. Merril Lunch & Co.,*
138 F.3d 46, 52 (2d Cir. 1998) ........................................................... 8

*MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC,*
268 F.3d 58 (2d Cir. 2001) ............................................................... 22

*Marcus v. AT&T Corp.,*
396 F. 3d 161, 172 (2d Cir. 2005) ..................................................... 7

*Matrixx Initiatives, Inc. v. Siracusano,*
563 U.S. 27 (2011) ................................................................. 6, 18

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.,*
84 F.3d 560, 567 (2d Cir. 1996) ....................................................... 11

*Nat'l Union Fire Ins. Co. v. BP Amoco P.L.C.,*
319 F. Supp. 2d 352 (S.D.N.Y. 2004) ............................................. 15

iv

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*,
87 N.Y.2d 614 (1996) ................................................................................ 20, 21

*Novak v. Kasaks*,
216 F.3d 300, 307 (2d Cir. 2000) ........................................................................ 9

*N.Y. Medscan, LLC v. N.Y. Univ. Sch. of Med.*,
430 F. Supp. 2d 140, 149 (S.D.N.Y. 2006) ......................................................... 7

*NW Direct Design & Mfg., Inc. v. Global Brand Mktg., Inc..*,
1999 U.S. Dist. LEXIS 10462 (S.D.N.Y. July 8, 1999)..................................... 15

*In re Openwave Sys. Sec. Litig.*,
528 F. Supp. 2d 236, 248 (S.D.N.Y. 2007) ........................................................ 6

*Perez-Rubio v. Wyckoff*,
718 F. Supp. 217 (S.D.N.Y. 1989) .................................................................... 12

*Resolution Trust Corp. v. Latham & Watkins*,
909 F. Supp. 923 (S.D.N.Y. 1995) ................................................................... 24

*Robinson v. Overseas Military Sales Corp.*,
21 F.3d 502, 507 (2d Cir. 1994) ........................................................................ 6

*Rolls-Rouce Motor Cars, Inc. v. Schudroff, BBS*,
929 F. Supp. 117 (S.D.N.Y. 1996) ............................................................... 22, 23

*In re Scholastic Corp. Sec. Litig.*,
252 F.3d 63, 39 (2d Cir. 2001) ....................................................................... 6, 9

*Shanahan v. Vallat*,
No. 03 Civ. 3496, WL 2937805 (S.D.N.Y. Dec. 19, 2004)............................... 12

*Teachers' Retirement Sys. of Louisiana v. A.C.L.N. Ltd.*,
No. 01 Civ. 11814 (MP), 2003 WL 1058090 (S.D.N.Y. May 15, 2003) ........... 12

*Thomas v. City of N.Y.*,
143 F.3d 31, 36-37 (2d Cir. 1998).................................................................... 6

*Thorsen v. Sons of Norway*,
996 F. Supp. 2d 143 (E.D.N.Y. 2014) .............................................................. 24

*Treppe v. Biovail Corp.*,
2004 WL 2339759 (S.D.N.Y. Oct. 15, 2004).................................................... 25

*Williams v. Williams,*

23 N.Y.2d 592 (1969) .......................................................................................... 25

*In re WRT Energy,*

No. 96 CV 3610, 2005 WL 323729 (S.D.N.Y. Feb. 9, 2005) .............................. 6

*Zherka v. Amicone,*

634 F.3d 642 (2d Cir. 2011) ............................................................................... 25

## S<span>TATUTES</span>, R<span>ULES</span>, R<span>EGULATIONS</span> & T<span>EXTS</span>

Page(s)

15 U.S.C. §78aa ................................................................................ 8

15 U.S.C. §78t(a) ............................................................................. 8

15 U.S.C. §78j(b) ............................................................................. 8

15 U.S.C. §78u-4(b)(2) ................................................................ 9, 16

Fed. R. Civ. P. 8 ............................................................................. 7

Fed. R. Civ. P. 8(a) ..................................................................... 8, 9

Fed. R. Civ. P. 9 ............................................................................. 7

Fed. R. Civ. P. 9(b) ................................................................... 8, 16

Fed. R. Civ. P. 12(b)(2) .............................................................. 5,6

Fed. R. Civ. P. 12(b)(2) ................................................................. 6

N.Y. C.P.L.R. §302(a)(1) ............................................................. 15

N.Y. Civil Rights Law, Section 74 ............................................... 25

## Preliminary Statement

Plaintiff ADAR BAYS, LLC ("Plaintiff" or "ADAR") respectfully submits this Memorandum of Law in Opposition to PUGET TECHNOLOGIES, INC. ("Defendant" or "PUGE") and HERMANN C. BURCKHARDT'S ("Defendant" or "Burckhardt") (collectively, the "Defendants'") Motion to Dismiss the First Amended Complaint ("FAC"). Plaintiff brought this action against Defendants for violations of Sections §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), breach of contract, conversion, tortious interference with prospective economic advantage, piercing the corporate veil, and defamation and have secured a preliminary injunction from this Court, requiring PUGE to honor Plaintiff's requests for conversion under the terms of the Note Defendant PUGE entered on January 30, 2015.

In the main, Defendant Hermann Burckhardt, the Chief Executive Officer of PUGE, alleges in his motion to dismiss that this Court has no personal jurisdiction over him. On January 5, 2016, the Court held a telephonic hearing between the parties and ordered jurisdictional discovery of Mr. Burckhardt. PUGE produced certain corporate formality documents to Plaintiff, and Plaintiff completed Mr. Burckhardt's deposition on February 26, 2016 in Miami, Florida. Defendants originally alleged that no such documents existed. (Decl. of Kevin Murphy, Ex. 1, attaching Defendants' Responses to Production Requests). Mr. Burckhardt was unable to explain this discrepancy at his deposition. (*Id*. at Ex. 2, Tr. 53:11-59:4.) With respect to Mr. Burckhardt, as the deposition testimony demonstrates, this Court retains personal jurisdiction over Defendant Burckhardt as he constitutes a

2

person who had control over PUGE during its commission of securities fraud. (*Id.* at Ex. 2, Tr. 26:10-17; 36:10-15; 58:20-59:4.)

As for the remaining points Defendants raise in their motion, Defendants allege that the FAC otherwise contains "many misrepresentations" (Dkt. 40 at 1), but Defendants fail to point to even a single example. Defendants assert that "Plaintiff is attempting to squeeze Defendants into paying usurious and exorbitant payments" (*id.*) yet fail to appreciate that: (i) usury is defined by statute and is wholly inapplicable to the facts underpinning the instant matter[1]; and, (ii) that the payments which Defendants describe as "usurious and exorbitant" are owing under a *valid agreement to which Defendants are bound*. While Defendants seek to impute the notion that, "Plaintiff goes beyond what was anticipated in the contract," as the FAC evidences, *all Plaintiff has asked Defendants to do at every stage of this dispute is to conduct themselves in accordance with the terms of said contract.*

## FACTS

As alleged in the FAC, this is an action regarding the meltdown of a publicly-traded corporation at the hands of its control person Burckhardt and the resulting federal securities law violations and supplemental New York State law claims for breach of contract, tortious interference and defamation flowing therefrom. (Docket Entry ("Dkt.") 34). The FAC sets forth the following key allegations.

On or about January 30, 2015, after arms-length negotiations, Defendant PUGE duly issued a $75,000 8% Convertible Redeemable Promissory Note to Plaintiff (the "Note"). (Dkt. 34 at ¶9 and Ex. A, attached thereto). The Note

---

[1] *See* N.Y. Gen. Oblig. Law § 5-501(2); 3 N.Y.C.R.R. § 4.3;  3 N.Y.C.R.R.  § 4.2.

provided that Plaintiff, at any time after execution, had the right to convert all or part of the Note into shares of PUGE common stock. (*Id*. at ¶10). In order to ensure that sufficient shares were available for conversion, the Note provided that PUGE was to issue irrevocable transfer agent instructions reserving 6,000,000 shares of its common stock for conversion under the Note. (*Id*. at ¶14). Further, the Note required that PUGE, at all times, reserve a minimum of four times the amount of shares required if the Note were to be fully converted. (*Id*.)

Following the execution of the Note, PUGE, at least initially, complied with its terms. (*Id*. at ¶ 17). From execution through September 2015, Plaintiff successfully submitted three conversions requests to PUGE, totaling twenty-one thousand dollars ($21,000 USD) and leaving a remaining balance of fifty-four thousand dollars ($54,000 USD) plus interest accruing thereupon, on the Note. (*Id*. ¶¶ 18-20).

Without excuse or justification, subsequent attempts to convert the remaining portions of the Note and requests that PUGE increase its share reserve to the mandated levels would ultimately be ignored. (*Id*. at ¶¶ 21- 29).

PUGE proved unable to satisfy its obligations. On September 16, 2015, PUGE sent a proposal letter (the "Proposal") to its Note holders, including Plaintiff. (*Id*. at ¶ 23). PUGE's proposal actually amounted to a plan through which PUGE would be permitted to walk away from its obligations. (*Id*. at ¶ 24). ADAR refused.

On October 1, 2015, PUGE announced that Defendant Burckhardt had been appointed as President and CEO. Shortly thereafter, Defendants began a campaign

designed to repudiate ADAR, its rights under the Note, and thereby manipulate the company's stock price.  (*Id*. at ¶¶30-41.)

Having failed to respond to Plaintiff's conversion notice and its request that PUGE increase its share reserve pursuant to the terms of the Note, Defendant Burckhardt on or about October 16, 2015, caused PUGE to make as part of its public filing a  "Civil Theft Letter" (the "Civil Theft Letter").  The Civil Theft Letter accused Plaintiff of engaging in a scheme to defraud PUGE.  (*Id*. at ¶30).  These allegations are patently false and amount to nothing more than fraud and defamation of Plaintiff.

Burckhardt's control over PUGE is not contested.  He is the CEO and directs all operations of PUGE. The public filing of the Civil Threat Letter accompanied Burckhardt's own ratification.  (*Id*. at ¶36 & Exhibit M.)  In his declaration attached to the Motion to Dismiss, he claims that the filing of the Civil Letter, was the result of "our investigation", flowing from his "duty, as CEO."   (Dkt. 49, Ex. C, ¶¶ 5-6.)  Further, concurrent with the execution of his employment agreement with PUGE, Burckhardt removed all employees, and the company was moved from Colorado to Burckhardt's home in Miami, FL. (Murphy Decl., Ex. 2, Tr. 36:6-21.)

<u>A<small>RGUMENT</small></u>

## I.    THE APPLICABLE PLEADING STANDARDS ON A MOTION TO DISMISS

### A.    Standard of Review on a Rule 12(b)(2) Motion

A plaintiff need only make a prima facie showing to defeat a motion to dismiss. All pleadings and supporting materials submitted in opposition to a pre-

discovery Rule 12(b)(2) motion are construed in the light most favorable to the non-movant. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

**B.      Standard of Review on a Rule 12(b)(6) Motion**

This Court's approach on a motion to dismiss under Rule 12(b)(6) is well-settled: legal claims should be liberally construed, all facts alleged in a complaint are to be taken as true, and all reasonable inferences should be drawn in the plaintiff's favor. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). This approach was recently affirmed in *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 49 (2011) where the U.S. Supreme Court emphasized that, on a motion to dismiss, the allegations in a complaint are presumed true and they are "taken collectively" in assessing plausibility. "The court may grant the motion only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Thomas v. City of N.Y.*, 143 F.3d 31, 36-37 (2d Cir. 1998). In addition, "all reasonable inferences [must be drawn] in favor of the non-moving party." *In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 248 (S.D.N.Y. 2007). "When presented with a Fed. R. Civ. P. 12(b)(6) motion, the Court's task is to assess the legal feasibility of the complaint rather than to weigh the evidence that might be offered in support thereof." *In re WRT Energy*, No. 96 CV 3610, 2005 WL 323729, at *5 (S.D.N.Y. Feb. 9, 2005). This standard and the presumptions in favor of plaintiffs apply equally in suits alleging violations of the federal securities laws. *See, e.g., In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 39 (2d Cir. 2001) (securities action).

### C. Rule 8's Permissive Standards Apply to ADAR's Claims for Control Liability, Injunctive Relief, Conversion, Tortious Interference and Defamation.

"Under the Federal Rules it is remarkably easy for a plaintiff to plead a claim: Unless the claim falls into one of the two exceptions set forth in Rule 9 [which involve claims of fraud of mistake], a plaintiff must simply provide: (1) a short and plain statement of the grounds upon which the court's jurisdiction depends… (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the plaintiff seeks." *IPO Litigation*, 241 F. Supp. 2d 281, 333 (S.D.N.Y. 2003)(quoting Fed. R. Civ. P. 8(a)).

In evaluating allegations on a motion to dismiss, the court is required to accept all factual allegations. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007). There need only be "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Moreover, "[d]etermining whether a complaint states a plausible claim for relief…requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Under the well-pleaded complaint rule, plaintiffs are the masters of their own complaint, free to select which claims to plead and how to plead them. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998). As a result, a defendant cannot succeed on a motion to dismiss by selectively referring to allegations against it and "ignoring the complete picture painted by plaintiffs." *See N.Y. Medscan, LLC v. N.Y. Univ. Sch. of Med.*, 430 F. Supp. 2d 140, 149 (S.D.N.Y. 2006).

Moreover, as Defendants do not make any mention whatsoever of ADAR's claims sounding in Section 20(a) of the Exchange Act, Defendants apparently do not contest that claims under Section 20(a) of the Exchange Act need to plead control over the entity under the heightened pleading standards of Rule 9. Section 20 establishes joint and several liability for any person or company that "directly or indirectly" controls another person that violates another provision of either the Securities Act or the Exchange Act.  *See* 15 U.S.C. §78t(a).  Such an understanding is axiomatic as, "scienter is not an essential element of a Section 20(a) claim," and it "must therefore be pleaded only in accordance with Rule 8(a)."  *In re IPO Sec. Litigation*, 241 F. Supp. 2d 281, 298 (S.D.N.Y. 2003).  Because Defendants have notice of these claims, Rule 8 is easily satisfied.

### D.   Rule 9(b) and Paragraph (b) of the PSLRA Apply Only to ADAR's Rule 10b-5 Claim

Section 10(b) of the Exchange Act prohibits the use of "any manipulative or deceptive" practice in connection with the purchase or sale of a security.  15 U.S.C. §78j(b).  To state a claim for securities fraud under Section 10(b), plaintiffs must plead that a defendant: (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiff's reliance was the proximate cause of their injury. *Lentell v. Merrill Lunch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005). Because Rule 10b-5 prohibits securities fraud, ADAR must satisfy Rule 9(b)'s requirements and plead "the circumstances constituting the fraud … with particularity." Fed. R. Civ. P. 9(b).

"The additional requirements of Rule 9(b) were well described by Judge Frank Easterbrook when he wrote that '[particularity] means the who, what, when, where, and how: the first paragraph of any newspaper story.'" *IPO Litigation*, 241 F. Supp. 2d at 327. Indeed, the particularity requirements of Rule 9 can be satisfied in "as little as in one paragraph" or even "one sentence." *See id*. "Even with the heightened pleading standard under Rule 9(b)…[the Second Circuit does] not require the pleading of detailed evidentiary matters in securities litigation." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001).

Contrary to Defendants' contentions (Dkt. 48 at 12-14), the Private Securities Litigation Reform Act ("PSLRA"), enacted in 1995, only altered the pleading requirements of the Exchange Act with respect to one element of a securities fraud claim: scienter. Under the PSLRA, a plaintiff alleging securities fraud claims under Rule 10b-5 must "state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind," 15 U.S.C. § 78u-4(b)(2), i.e., "an intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 17 (1976). Plaintiffs may establish scienter either: (a) by alleging facts to show that Defendants had both the motive and opportunity to commit fraud; or, (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000).

II.     **THE FAC ALLEGES A LEGALLY SUFFICIENT BASIS TO ASSERT JURISDICTION OVER DEFENDANTS BURCKHARDT AND PUGE**

   A.     **Personal Jurisdiction in a Federal Question Case Extends to the Limit of the Due Process Clause of the Fifth Amendment.**

The FAC alleges that both PUGE and Burckhardt are liable for violations under federal securities law.  This is a federal question case.  Accordingly, the Fifth Amendment due process clause presents the only limit on personal jurisdiction over the Defendants.  *Angel v. Bullington*, 330 U.S. 183 (1947) ("Of course, where resort is had to a federal court not on grounds of diversity of citizenship but because a federal right is claimed, the limitation upon the courts of a State do not control a federal court sitting in the State").

Here, Defendant seeks to assert that the FAC is "devoid of any allegations of fact supporting the exercise of personal jurisdiction over Defendants, specifically Burckhardt, pursuant to either the specific or general provisions of the Long Arm Statute." (Dkt. 48 at 6).  Defendant's argument is unavailing.  The FAC adequately pleads jurisdiction under both the federal standard and New York's own long-arm statute.

   B.     **Burckhardt is Subject to This Court's Jurisdiction under the Exchange Act.**

Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78aa, empowers the United States courts to exercise personal jurisdiction in Rule 10b-5 cases to the full extent permitted by due process.  *ATSI Comm., Inc. v. The Shaar Fund, Ltd.*, No. 02 Civ. 8726 (LAK), 2004 U.S. Dist. LEXIS 7411 at *4 (S.D.N.Y. April 28, 2004).   To determine whether the exercise of personal

jurisdiction is proper, the Court must conduct a two-part due process analysis: a "minimum contacts" inquiry and a "reasonableness" inquiry. *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). If the Court finds sufficient contacts, it then assesses the "reasonableness" – from the forum's perspective – of exercising jurisdiction. *Id.* As both tests are easily satisfied here, the Court should deny Defendants' motion to dismiss.

### 1. The minimum contacts test is satisfied.

Minimum contacts with the forum may be established under either general or specific jurisdiction. General jurisdiction exists where a defendant's contacts with the forum are "continuous and systematic" and is not relevant here. *Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). ADAR's FAC instead pleads specific jurisdiction, which "exists when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contact with the forum." *Metropolitan Life Ins. Co. v. Robertson Ceco-Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996).

To assert specific jurisdiction, the Court must find that "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Moreover, courts examine whether it was foreseeable to the defendant that its actions would cause injury in the forum State. *Id.* at 474 ("defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there'").

11

Defendant Burckhardt asserts a myriad of reasons as to why this Court lacks jurisdiction over him.  For example, "Burckhardt can attest that he has not been present in New York in years, he does not solicit business, and does not engage in business or personal activities in New York."  (Dkt. 48 at 9).  Not one of these arguments has any merit.

Personal jurisdiction in a Rule 10b-5 case may be asserted over a defendant with *no* physical contact with the forum if he or she has "caus[ed] an effect in the state by an act done elsewhere."  *Perez-Rubio v. Wyckoff*, 718 F. Supp. 217, 228 (S.D.N.Y. 1989); *see e.g., Shanahan v. Vallat*, No. 03 Civ. 3496, WL 2937805 at *8 (S.D.N.Y. Dec. 19, 2004) ("These contacts are sufficient to establish specific personal jurisdiction: defendants acted with intent to influence a resident of the United States and this litigation arises out of defendants' acts.").  Absent New York presence, this Court would still have authority to exercise personal jurisdiction based upon Burckhardt's non-New York activities that affected New York investors, ADAR's New York-based business, and the Note, governed by its terms under New York law.  (Dkt. 34, Ex. A at ¶14.)  See *Teachers' Retirement Sys. of Louisiana v. A.C.L.N. Ltd.*, No. 01 Civ. 11814(MP), 2003 WL 1058090, at *8-9 (S.D.N.Y. May 15, 2003).  Here, ADAR has alleged that: 1) a substantial part of the property at issue is located in New York, 2) that New York courts are the courts of exclusive jurisdiction under the Note, 3) that Defendants' conduct impacted in ADAR's ability to make loans to other public companies, listed on stock.  (Dkt. 34 at ¶¶8 & 109-14.)

As alleged, Defendant Burckhardt knew or should have known that his conduct would have a direct effect in New York and on investors in New York. (*Id.* at ¶¶30-40; 67-78 &112-14.) *See Derensis v. Coopers & Lybrand Chartered Accountants*, 930 F. Supp. 1003, 1014 (D.N.J. 1996) (personal jurisdiction existed over Canadian defendants who allegedly approved and disseminated financial statements which influence the price of traded securities); *Landry v. Price Waterhouse Chartered Accountants*, 715 F. Supp. 98, 102 (S.D.N.Y. 1989) (finding personal jurisdiction based on defendant's "behind the scenes" role in the subject transaction). The FAC's allegations sufficiently establish "minimum contacts" with the United States such that the exercise of personal jurisdiction is appropriate and proper.

### 2. The reasonableness test is also satisfied.

Further, it is reasonable to compel Burckhardt to litigate this matter in the Southern District of New York. Once minimum contacts are established, it is the "exceptional situation" where the exercise of personal jurisdiction is unreasonable. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 130 (2d Cir. 2002). As the Second Circuit has explained:

> Courts are to consider five factors in evaluating reasonableness: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies. Where a plaintiff makes the threshold showing of the minimum contacts required for the first

13

> test, a defendant must present a compelling case that the
> presence of some other consideration would render
> jurisdiction unreasonable.

*Id.* at 129.  The burden now shifts to the defendants to show that under the *Bank Brussels Lambert* factors, the exercise of personal jurisdiction is unreasonable.  All five factors support the exercise of personal jurisdiction over the Defendants.

It is indisputable that this Court has an interest in enforcing the securities laws against obvious violators such as Defendants herein, who were active and willful participants in Defendants' fraud.  *See SEC*, 1999 WL 76801 at *4.  In addition, Plaintiff has a strong interest in obtaining convenient and effective relief, having suffered significant losses.  *Id.*  Moreover, the courts in this District, and the remedies provided to plaintiffs pursuant to the Exchange Act, support the assertion of jurisdiction here.  *See Cromer Fin. v. Berger*, 137 F. Supp 2d 452, 479 (federal courts in the Southern District of New York have an "expertise in [securities] litigation").

Second, New York, selected by both Plaintiff and Defendants to serve as the exclusive state of adjudication (Dkt. 34, Ex. A at ¶14), has a strong interest in adjudicating the case.

Third, ADAR and the efficient functioning of the interstate judicial system both support an exercise of jurisdiction in this district. *See, e.g., Bank Brussels Lambert*, 305 F.3d at 129-30. Other similarly-situated defendants, such as LG and Union Capital, have brought their own matters against PUGE in this judicial district. It is clearly more effective for all claims emanating from this common

nucleus of operative fact to be litigated together in one court rather than requiring Plaintiff to file separate actions in both New York and Florida. *See Nat'l Union Fire Ins. Co. v. BP Amoco P.L.C.*, 319 F. Supp. 2d 352, 366 (S.D.N.Y. 2004) (the "burden on plaintiffs, were they required to bring separate actions against each defendant . . . would be colossal").

Finally, ADAR's interests in furthering substantive social policies, *i.e.*, protecting the integrity of the securities market and admonishing the fraudulent conduct of publicly traded companies and their control persons, will be advanced by hearing this case in a single New York forum. *See Bank Brussels Lambert*, 305 F.3d at 129-30. This case would not impose an undue burden on any other states. Exercising personal jurisdiction here would not offend any other state because federal law, not New York law, will apply.

## C.   PUGE is Specifically Covered by New York's Long-Arm Statute, CPLR 302(a).

To establish long-arm jurisdiction under CPLR § 302(a)(1), "the plaintiff must show that the defendant transacted business with the state and that the cause of action arose from that transaction." *NW Direct Design & Mfg., Inc. v. Global Brand Mktg., Inc.*, 1999 U.S. Dist. LEXIS 10462, at *7 (S.D.N.Y. July 8, 1999). PUGE contracted under New York law and specifically subjected itself to personal jurisdiction exclusively in this judicial district.  (Dkt. 34, Ex. A at ¶14.); *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) (noting forum selection clause is the end of personal jurisdiction inquiry).

D.    **The Extension of Jurisdiction over Burckhardt Does Not Offend Traditional Notions of Fair Play**

As established *supra*, both Burckhardt and PUGE had every reason to expect that they would be haled into the New York courts.  The Note requires that any suit be brought in the New York courts.  (Dkt. 34, Ex. A. at 14.)  Any claim that PUGE did not "reasonably anticipate being hailed into court" in New York beggars belief. *See Burger King*, 471 U.S. at 474.

III.    **ADAR HAS MET ITS BURDEN UNDER RULE 9b OF THE FEDERAL RULES OF CIVIL PROCEDURE WITH RESPECT TO ITS CLAIM OF SECURITIES FRAUD**

The detailed allegations in the FAC meet, if not exceed, the requirements of Rule 9(b) and the PSLRA.  There can be no question that the FAC adequately identifies Defendants' false and misleading statements, explains how those statements are false and misleading, and with regard to ADAR's Exchange Act claims, gives rise to a strong inference that Burckhardt and PUGE acted with scienter.  For example, Plaintiff in the FAC alleges:

- That PUGE alleged ADAR contracted for loans that "clearly fraudulent".  Yet ADAR furnished money to PUGE under a negotiated, arms-length promissory note, which PUGE duly executed.  (Dkt. 34, ¶31).  ADAR attached the Note to the FAC.  (*Id.*, Ex. A.);

- That PUGE alleged that ADAR and other lenders "arranged a default on inception."  But ADAR was in no position to do that as PUGE was never under the control of ADAR.  (Dkt. 34, ¶32);

- That PUGE alleged that "the lender" (presumably ADAR) was "paid a huge commission."  But no such commission had ever been tendered. (Dkt. 34, ¶34);

- That PUGE alleged that ADAR acted in concert with New Venture Attorney Tomer Tal, who represented another entity.  But ADAR never acted in concert with that New Venture Attorney.  (Dkt. 34, ¶35).

ADAR further supported its 9b allegations by noting that Mr. Burckhardt had engaged in making false statements before (Dkt. 34, ¶39), and did so again under these circumstances to falsely demonstrate that PUGE was not responsible for the volatility of its stock.    ADAR alleged that Burckhardt's and PUGE's actions "artificially influenced PUGE's perceived market value and investor perceptions of the company in the short-term." (Dkt. 34, ¶37).   Consequently, ADAR has more than adequately stated its Rule 10b-5 claim.

According to PUGE, the FAC fails to identify the party who committed the securities fraud.  (Dkt. 48 at 13).  But the FAC is crystal-clear.  In paragraph 30, Hermann Burckhardt is named as the author of an email, which sent the Civil Theft Letter to ADAR, baselessly accusing ADAR of engaging in a scheme to defraud PUGE.  (Dkt. 34 at 8.)  The Civil Theft Letter is attached to FAC as Exhibit L, revealing the author of the document to be Alexander Funes, counsel to PUGE in this matter.  (*Id.*, Ex. L.)  In paragraph 36, the FAC details that PUGE caused the public dissemination of the baseless Civil Theft Letter.  (*Id.*)  As Exhibit M makes plain, Defendant Burckhardt ratified the Civil Theft Letter's allegations in the public 8K to which the baseless Civil Theft Letter was attached.   (*Id.*, Ex. M.) Paragraph 72 of the FAC alleges that PUGE and Burckhardt were personally and collectively responsible for such conduct.  (*Id.*)

Defendants' Motion to Dismiss does not substantively dispute Plaintiff's claim for control liability against Burckhardt.   (Dkt. 48 at 14.)   Plaintiff's claim more than passes muster.   In determining what constitutes control liability, courts have held that, "[c]ontrol can be demonstrated by showing that the defendant possessed the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract or otherwise." *In re AOL Time Warner, Inc. Secs.*, 381 F. Supp. 2d 192, 234 (S.D.N.Y. 2004).   Here, Plaintiff has alleged that Burckhardt was PUGE's CEO, a director, and owner of approximately ten percent of the Company's stock, and in his capacity as CEO and personally engaged in a scheme to disseminate materially false allegations and omissions to defraud shareholders at Plaintiff's.   (Dkt. 34 at ¶¶4, 30-41 & 67-78.)   This alone demonstrates control.

## IV.   PLAINTIFF'S REMAINING CAUSES OF ACTION ARE ADEQUATELY PLED.

### A.   Each of Plaintiff's Claims is Fully Supported by the Facts

In Section B(2) of its Motion to Dismiss, Defendants contend in an unsupported conclusion that Plaintiff's "Third, Fourth [and] Fifth [Counts], which request injunctive relief, lack specificity and should be dismissed." (Dkt. 48 at 14.) Defendants either appear to ignore that each of these counts rely on the extensive facts plead before (Dkt. 34 at ¶¶86, 83 & 97), or label these inappropriate "shotgun" allegations.  (Dkt. 48 at 16.)  *See Matrixx,* 563 U.S. at 49 (requiring that complaints be taken collectively).  With respect to Plaintiff's Third Claim for injunctive relief, the factual basis therefore has been exhaustively been set forth in paragraphs 1-85

of the FAC, the exhibits attached thereto, and in the testimony of Ari Goldstein, in open court and subject to Defendants' ability to cross-examine. The Court has already relied on that testimony and issued a preliminary injunction Plaintiff requested. (Dkt. 37.) Defendants can hardly undo that result on this motion. The factual basis for Plaintiff's Fourth through Seventh Claims for Relief, are similarly exhaustively set forth in the same paragraphs. Nor do Defendants' assertions that the causes of action "omit any reference to PUGE or Burckhardt" (Dkt. 48 at 13) carry any merit. Defendants cannot dispute that the relief sought is fully specified by Claim in Plaintiff's Prayer for Relief. (Dkt. 34 at 25-26.)

Defendants' assertion that the FAC contains dismissable "shotgun allegations" is weak at best. For example, Defendants rely on *Curanaj v. Cordone*, decided by Judge Ramos of this Court. (Dkt. 48 at 23.) According to Defendants, Judge Ramos found that "shotgun pleading" demonstrates "utter disrespect for Rule 8" and exists where plaintiff sets forth a potpourri of vague and conclusory allegations that for the most part are not linked to any specific factual assertions.") But none of the words Defendants quote exist in the opinion. *See generally Curanaj v. Cordone*, 10-CV-5689 (ER), 2012 U.S. Dist. LEXIS 135101 (S.D.N.Y. September 19, 2012). Defendants' reliance on *Int'l Acad. of Bus. & Fin. Mgmt v. Mentz*, 12-CV-00463, 2013 U.S. Dist. LEXIS 7714 (D. Col. Jan. 18, 2013) is also unavailing, but for different reasons. There, the district court of Colorado rejected the onerous task of going to complaint to locate how it was the litigants met their pleading specificity requirement under Rule 9b for a violation of the Colorado Consumer Protection Act.

*Id*. at *19.  Thus, the "shotgun pleading" attack from *Mentz* can only be relied as potentially persuasive authority upon for those claims covered by Rule 9b.  Claims covered by Rule 8 of the Federal Rules of Civil Procedure remain unaffected.  And Plaintiffs have pointed out in this opposition the precise paragraphs that support its Securities Rule 10b-5 claim, the only claim subject to the specific pleading requirement.  And *Mentz*, of course, does not change the liberal pleading standard of *Twombly*.  All that a plaintiff need show is that the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly, 550* U.S. at 572.  Notice pleadings do not require self-referencing footnotes of each legal section to the factual section that preceded it.

### B.   The FAC Adequately States a Claim for Tortious Interference with Prospective Economic Advantage.

Defendants urge this Court to dismiss Claim 8 in part because it "does not even include a claim for breach of contract."  (Dkt. 48 at 17.)  Defendants are evidently not aware that different standards apply to a claim for tortious interference with prospective economic advantage, which Plaintiff ADAR alleges, and tortious interference <u>with contractual relations</u>, which ADAR does not allege.  The New York Court of Appeals addressed the differences between the causes of action in *NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d, 614, 621 (1996):

> Where there is an existing, enforceable contract and defendant's deliberate interference results in a breach of that contract, a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior.  Where there

20

> has been no breach of an existing contract, but only
> interference with prospective contract rights, however,
> plaintiff must show more culpable conduct on the part of
> the defendant.

The "more culpable conduct" that the New York Court of Appeals referred to includes "harassment with meritless litigation," precisely what ADAR alleged in the FAC. (*See* Dkt. 34, Ex. L, threatening ADAR and others with liability under Florida's Civil Threat statute). Indeed, by alleging that PUGE and Burckhardt committed securities fraud under SEC Rule 10b-5, Defendants can hardly persuasively claim that ADAR failed to plead the commission of a crime or independent tort. (Dkt. 48 at 17.) Rule 10b-5 constitutes both. Nor is there any merit to Defendants' assertion that they were simply following their lawful duty to make 8K disclosure as a public corporation. (Dkt. 40 at 18.) No provision of law requires a public corporation to spread misrepresentations to its shareholders. Quite the contrary. Rule 10b5 exists to deter and punish that very result. Defendants' reliance on *Carvel Corp. v. Noonan*, 3 N.Y.3d 182 (2004) is wholly misplaced. In *Carvel*, the New York Court of Appeals certified the question whether mere competitive conduct was sufficient to demonstrate tortious interference with prospective economic relations. The *Carvel* Court ruled such conduct insufficient. *Id.* at 191. Here, ADAR has plead exactly what the *Carvel* court required proof of, criminal or independently tortious conduct on the part of the Defendants. (Dkt. 34, ¶¶30-41 & 67-76.)

### C.    The FAC Adequately States a Claim for Piercing the Corporate Veil.

In order to state a cause of action for piercing the corporate veil, a "plaintiff must allege (1) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (2) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.,* 295 F. Supp. 2d 366, 379 (S.D.N.Y. 2003).    Furthermore, allegations of piercing the corporate veil "are judged according to the liberal 'notice pleading' standard of Fed. R. Civ. P. 8(a), which requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief." *Rolls-Royce Motor Cars, Inc. v. Schudroff, BBS,* 929 F. Supp. 117, 122 (S.D.N.Y. 1996).    Courts in the Second Circuit have repeatedly held that "an apparent attempt to 'pierce the corporate veil,' which is typically a 'fact specific inquiry' [is] not amenable to resolution in a motion to dismiss." *Grunblatt v. Unumprovident Corp.,* 270 F. Supp. 2d 346, 352 (E.D.N.Y. 2003), *citing MAG Portfolio Consultant, GMBH v. Merlin Biomed Group, LLC,* 268 F.3d 58, 63 (2d Cir. 2001).

The FAC alleges that: (i) Mr. Burckhardt caused PUGE to sign an employment contract for a 5-year term whereby Mr. Burckhardt will receive an excessive compensation (Dkt. 34, ¶116); (ii) Mr. Burckhardt admitted on a number of occasions to inadequate capitalization of PUGE, a function of Mr. Burckhardt's mismanagement of its assets (*Id.* at ¶117); (iii) Mr. Burckhardt manages PUGE as an alter ego of himself (*Id.* at ¶118); (iv) Plaintiff has suffered substantial damages

as a result of the fraud and conversion being perpetrated by Defendants  (*id.* at ¶ 119).

Courts have routinely denied motions to dismiss on the basis of similar allegations.  *See, e.g., JSC*, 295 F. Supp. 2d at 379 (allegation that defendants used their domination over the corporation to place assets beyond the reach of creditors, thereby causing injury to the plaintiff, satisfied second element for veil piercing claim); *Dist. Council No. 9 v. APC Painting, Inc.*, 272 F. Supp. 2d 229, 241 (S.D.N.Y. 2003) (denying motion to dismiss a veil piercing claim where complaint alleged that defendant exercised control over the corporation so as to wrongfully avoid corporation's obligation to plaintiff); *Accordia Northeast, Inc. v. Thesseus Int'l Asset Fund*, 205 F. Supp. 2d 176, 181-182 (S.D.N.Y. 2002) (in an action against two corporations for beach of contractual obligation to remit funds to plaintiff and against individual defendant on veil-piercing theory, allegations of gross undercapitalization of corporations, so as to leave them with no assets to compensate plaintiff, were sufficient to plead veil-piercing claim); *Rolls-Royce Motor Cars*, 929 F. Supp. at 122 (allegations that defendants used their control over corporations to transfer assets to another entity to prevent creditors from reaching assets satisfied plaintiff's burden).

Defendants rely upon the irrelevant propositions that PUGE has thousands of shareholders and that Mr. Burckhardt's salary is not significant in comparison to PUGE's assets and liabilities, neither of which appears in the record.  (Dkt. 34 at 19).  But alter-ego liability is established through control, the manner in which that

control is exercised, and fraudulent or misleading conduct directed at creditors.  *See Resolution Trust Corp. v. Latham & Watkins*, 909 F. Supp. 923, 931 (S.D.N.Y. 1995).  The FAC fully demonstrates domination of the company by Defendant Burckhardt and its continued operation for the benefit of Defendant Burckhardt.

### D.     The FAC Adequately States a Claim for Defamation.

Defendants urge that Plaintiff has failed to state a claim for defamation. (Dkt. 40 at 20.)  As noted above, this Court possesses specific jurisdiction over at least Defendant PUGE to this action.  Accordingly, it is axiomatic that, flowing therefrom, this Court possesses the "adjudicatory authority over issues that arise out of or relate to the [parties' conduct] with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984).  Accordingly, as the FAC alleges that Defendants' defamatory statements are part of the operative nucleus of fact from which the claims in the FAC emanate, analysis of New York's long-arm jurisdiction statute with regards to Plaintiff's defamation claim is unnecessary. Plaintiff need not "specify which Defendant is liable for this claim," as Defendant asserts continually, due to the fact that ADAR alleges PUGE is Burckhardt's alter-ego.

The elements of a defamation claim are that the defendant made: (1) a false statement about the plaintiff; (2) published to a third party without authorization or privilege; (3) through fault amounting to at least negligence on the part of the publisher; (4) that either constitutes defamation *per se* or caused "special damages". *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 173, (E.D.N.Y. 2014). When

statements fall within established categories of *per se* defamation, the law presumes that damages will result, and they need not be proven. *Zherka v. Amicone*, 634 F.3d 642, 645 (2d Cir. 2011). A statement is defamation *per se* where it disparages a person in the way of his office, profession, or trade, such as here. *See Treppe, v. Biovail Corp.*, 2004 WL 2339759, at *26 (S.D.N.Y. Oct. 15, 2004). These elements have all been satisfied in the FAC. (Dkt. 34 ¶¶30-40, 68-78, 121-24). Nor can Defendants rely on Section 74 of the New York Civil Rights Law to insulate their defamatory statements. Section 74 does not allow a person to "maliciously institute a judicial proceeding alleging false and defamatory charges, and to then circulate a press or other communication based thereon and escape liability by invoking the statute." *Williams v. Williams*, 23 N.Y.2d 592, 599 (1969).

## CONCLUSION

For the foregoing reasons, Plaintiff ADAR BAYS, LLC respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety.

Dated: New York, New York
March 2, 2016

RESPECTFULLY SUBMITTED,
GARSON, SEGAL,
STEINMETZ, FLADGATE LLP
*ATTORNEYS FOR PLAINTIFF*

BY: _____
MICHAEL STEINMETZ (MS-3164)
KEVIN MURPHY (KM-2370)
164 WEST 25 STREET
SUITE 11R
NEW YORK, NY 10001
TELEPHONE: (212) 380-3623
FACSIMILE: (347) 537-4540
EMAIL: MS@GS2LAW.COM
KM@GS2LAW.COM
