UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ADAR BAYS, LLC,

    *Plaintiff*,                                CASE NO.: 15-CV-8860 (RA)

-v. -

PUGET TECHNOLOGIES, INC. and
HERMANN C. BURCKHARDT,

    *Defendants*.

---

## REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

I.    **Summary of Argument**..................................................................................................2

II.    **Argument**......................................................................................................................3

        A.    **Almost each individual claim for relief in its Complaint is ineffective due to lack of incorporation of sufficient facts and allegations** ....................................3

        B.    **The Amended Complaint fails to state a claim upon which relief can be granted**. ....................................................................................................................5

        C.    **Plaintiff failed to establish personal jurisdiction over Burckhardt in Amended Complaint and after Jurisdictional Discovery**..................................7

III.    **Conclusion** ....................................................................................................................5

## TABLE OF AUTHORITIES

**Federal Cases**                                                                                                         **Page**

*Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 490 (S.D.N.Y. 2011)……….8

*Charas v. Sand Tech. Sys. Int'l, Inc* No. 90 Civ. 5638, 1992 U.S. Dist. LEXIS 15227 (S.D.N.Y. Oct. 7, 1992). ................................................................................................................................. 8

*Coakley v. Jaffe,* 49 F. Supp. 2d 615, 625 (S.D.N.Y. 1999)........................................................... 5

*Curanaji v. Cordone,* 2012 WL 4221042 (S.D.N.Y. Sept. 19, 2012) . ......................................... 5

*Derensis v. Coopers & Lybrand,* 930 Supp. 1003, 1004 (D.N.J 1996)……………………….7

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005). ............................................................. 6

*Landry v. Price Waterhouse, 715 F. Supp. 98, 102 (S.D.N.Y 1989)*................................................ 7

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 168 (2d Cir. 2005).................................................. 6

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81-82 (2006). ....................... 6

*S&S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*, 108 A.D.2d 351, 489 N.Y.S.2d 478 (1st Dep't 1985)……………………………………………………………………………………….4

*Spectacolor Inc. v. Bangue Nationale de Paris*, 207 A.D.2d 726, 616 N.Y.S.2d 953 (1st Dep't 1994)……………………………………………………………………………………….4

*Wenz v. Becker, 948 F. Supp. 319, 323 (S.D.N.Y. 1996).* ............................................................. 9

**Statutes and Regulations**

15 U.S.C. § 78u-4(b)(1),(2)…………………………………………………………....6
N. Y. C. P. Law § 302…………………………………………………………………10
Fed. R. C. P. 8………………………………………………………………………….9
Fed. R. C. P. 9……………………………………………………………………….5, 6, 9
Fed. R. C. P.12(b)2……………………………………………………………………10
Fed. R. C.P 12(b)6…………………………………………………………………….10

## **SUMMARY OF ARGUMENT**

Plaintiff Adar has filed an Opposition to the Defendant's Motion to Dismiss the Plaintiff's Amended Complaint.  ADAR argues, *inter alia,* that its Amended Complaint should not be dismissed because it contains sufficient facts and pleads with enough specificity all the elements necessary for the claims to survive a Motion to Dismiss.

Mostly damaging to the Plaintiff, is not only its intentional pursue of legal claims against the individual Burckhardt, but also its misuse of the 10b and 10b-5 sections against both Defendants.  As Plaintiff states in its opposition, a requirement, of both of those sections, is that the Defendants be engaged in certain activity (buying or selling a security) and obtain some financial benefit (capital gain or other monetary benefit).

2

Whether the Plaintiff is allowed to amend again, the current Amended Complaint presents unrepairable defects, such as the façade of jurisdiction which purpose is to put pressure on Mr. Burckhardt, to defend an unnecessary case hundreds of miles away.

### III.   ARGUMENT

**A.   While Plaintiff's Amended Complaint has a lengthy and detailed factual background section, almost each individual claim for relief in its Complaint is rendered ineffective due to lack of sufficient facts and allegations.**

In challenging the Defendants position, that the Complaint is defective and lacks clear averments within each individual claim, the Plaintiff is correct in relying in the rationale that "on a motion to dismiss, the allegations in a complaint are presumed true and they are taken collectively in assessing plausibility. Plaintiff is also correct to state that under the Federal Rules it is remarkably easy for a Plaintiff to plead a claim. However, dismissal is reserved for cases, such as here, where the Complaint is so confused, ambiguous, and vague, or otherwise unintelligible, that its true substance, of any, is well disguised. *Salahuddin v. Cuomo,* 861 F.2d 40,42 (2d. Circuit 1988).

The most problematic part of Plaintiff's Complaint is its high-level content of ambiguous, vague, and at times "messy" structure of its arguments in the individual counts. This is something that the Plaintiff has not been able to overcome in the two Complaints that it has filed. When the allegations in the complaint do not allow the Defendants to admit, deny, or state "no knowledge" then it is clear that the Complaint is defective, ambiguous, and/or unintelligible.

For one example, take the First Claim does not specify whether that count is directed to PUGE or Burckhardt as it fails to identify the alleged faulty party that has committed the allegations. In the body of the Claim, the Plaintiff simply lumps together both the company and the individual. This makes it difficult, if not impossible at times, to exact the appropriate party

3

that the Plaintiff is referring to in the title and body of the claim. The same recurring problem can be seen in several counts of the Complaint.

A second example, showing that the Complaint is ambiguous and hard to discern, Claim Fourth (Failure to Deliver Shares), not only fails to establish a specific cause of action but also completely omits any reference to PUGE or Burckhardt or "Defendants." Similar deficiencies are encountered in Claim Fifth of the Complaint. Even more confusing, in Claim Four, and the Plaintiff cannot deny this, is the sequence of the sentences that basically states that it was the Plaintiff (not the Defendants) that breached the contract and defaulted on the Note. Understandably, that could be a typographical mistake, but that leaves the respondent to those allegations unable to adequately admit or deny.

This lack of clearness and minimum specificity, leaves the Defendant wondering what to admit or what to deny. The Plaintiff essentially engages the Defendants in an unfair game of not knowing the origin of each statement and argument, and leaving the respondent of the allegations no choice but to guess what to admit or deny.

The claim for tortious interference also cannot survive. A defendant will be liable for interference with contract if he intentionally interferes with the performance of the contract without legal or social justification. *See Spectacolor Inc. v. Bangue Nationale de Paris*, 207 A.D.2d 726, 616 N.Y.S.2d 953 (1st Dep't 1994); *S&S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*, 108 A.D.2d 351, 489 N.Y.S.2d 478 (1st Dep't 1985). Here, Defendants had both legal and social obligations. Despite Plaintiff's insistence that the Defendants were not justified in publishing the alleged negative statements, both PUGE and Burckhardt had an affirmative duty to notify shareholders through the SEC statement that the company had toxic loans that, after a lengthy internal investigation, were considered to be harmful to the company. The Plaintiff may

be upset about the result and publication of the investigation but it was an objective finding that the company did and the Defendants had a duty to notify shareholders via the SEC 8-K filing.

"Furthermore, despite Plaintiff deliberately attempts to ignore this, the Complaint does not survive a challenge that it constitutes a shot-gun Complaint incorporating 121 paragraphs by the time it reaches the 10th claim.  This has been criticized in New York.  *See Coakley v. Jaffe*, 49 F. Supp. 2d 615, 625 (S.D.N.Y. 1999), abrogated on other grounds by *Curanaj v. Cordone*, 2012 WL 4221042 (S.D.N.Y. Sept. 19, 2012) (finding that "shotgun pleading" demonstrates "utter disrespect for Rule 8" and exists where the plaintiff sets forth a "potpourri of vague and conclusory allegations that for the most part are not explicitly linked to any specific factual assertions"[1]

### B. The Amended Complaint fails to state a claim upon which relief can be granted regarding the any alleged violations of Rule 10b-5.

Contrary to Plaintiff's position, these two counts are defective for two reasons:  They do not comport with the detailed pleading requirements needed when alleging violation of 10(b) sections <u>and</u> the actions the Plaintiff describe on these two counts do not state that the Defendants "sold or bought" any securities, that they profited from any actions, or that they inflicted economic injury on any shareholders or persons wanting to invest in the company.

Again, the Plaintiff is correct in including the opinions of relevant case law that defines the level of specificity required on securities fraud claims.  As Plaintiff indicates, even one sentence may suffice to meet the pleading requirements.  But, unfortunately for Plaintiff, quantity does not always equals quality, and vice-versa.

---

[1] In its Motion to Dismiss Defendants inadvertently omitted the correct case citation (*Coakley*) and only included the case that abrogated it.  Hence, the language is not found in *Curanaj* but it is in *Coackley*.

Claims under Section 10(b) are subject to the heightened pleading requirements…in requires that the allegations "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. "*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81-82 (2006) (alteration in original) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005)); see also *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 168 (2d Cir. 2005) ("[R]ule [9(b)] is applied assiduously to securities fraud."); 15 U.S.C. § 78u-4(b)(1), (2).

A review of the First and Second Claims simply shows that two counts lack the language required by both PSLA and Fed. R. Civ. P. 9(b). The individual counts do not describe "what" was specifically said. The counts merely refer to a civil theft letter and to untruthful statements. Plaintiff at least could have included the specific language is challenging by including it in the count; it did not.

However, even if the Plaintiff would have been specific enough, most damaging and unfixable is that the Plaintiff does not specifically mention that Burckhardt and PUGE engaged in "buying, selling, or transacting" or that they benefitted "directly" from the 8-K statement that was published. As Plaintiff itself indicates, a violation requires that the Defendant made the alleged misstatements…. "**3) in connection with the purchase or sale of securities;**" Here, there was no sale or purchase transaction. PUGE was simply publishing its 8-K statement where they are required to publish important information, as required by the SEC. The Defendants good-faith action of disclosure cannot translate to an intentional action to defraud, hurt, or manipulate. The Defendants gained NOTHING at publishing the 8-k and Civil Theft Letter. To the contrary, it earned them a lawsuit and other ailments. The fact that Plaintiff say that Burckhardt benefitted by gaining a salary of $8,000 is far-fetched and an inapplicable. He already had a salary before the publication. Further, PUGE did not benefit from the publication.

6

If the result was a stock increase, then the shareholders, including ADAR, benefited from the publication.

### C. Not only did Plaintiff failed to establish personal jurisdiction over Burckhardt in the Amended Complaint, but also failed to prove it after Jurisdictional Discovery.

In summary, Plaintiff took individual Burckhardt's deposition in order to establish that personal jurisdiction is asserted over him because the corporate veil is pierced and any actions by PUGE constitute Burckhardt's actions. At the deposition, not a single shred of evidence showed that Burckhardt is the alter-ego of PUGE (and no other veil piecing theories were proven) or that personal jurisdiction is present.

As Plaintiff indicates, mostly specific personal jurisdiction is relevant in this case. Plaintiff maintains that an individual's acts outside the state can be minimum contacts to confer jurisdiction if the acts have an impact in the forum state. Plaintiff states that Burckhardt's activities and statements in the 8-K influenced traded securities and/or investors located in New York. Plaintiff mentions *Derensis v. Coopers & Lybrand,* 930 Supp. 1003, 1004 (D.N.J 1996) and *Landry v. Price Waterhouse,* 715 F. Supp. 98, 102 (S.D.N.Y 1989). This comparison, however, is extremely far-fetched and is not a fair comparison. In the present case, the Defendant Burckhardt's activities consist of publishing an 8-K of a penny stock. The purpose of the publication of the 8-K was required by the SEC since the Defendant Buckhardt, as CEO, had the affirmative duty to report that the company had engaged in several toxic loans, such as the Adar loan.

In sharp contrast, the cases in *Derensis* and *Landry*, dealt with defendants that were actively engaged in fraudulent activities for financial again. Those cases confer jurisdiction over "controlling" persons because those persons had control over the company but also because they benefitted financially and were engaged in systematic fraudulent transactions apparently before,

7

during, and after certain financial transactions.  The Court in those cases took into account that the stock was being traded in the NASDAQ and that significant amounts of money were involved as part of the fraudulent schemes.  Here, Mr. Burckhardt simply published an 8-K where he did not receive any financial gain or benefit.  He did as part of his individual capacity as the CEO and as part of SEC compliance which requires companies to publish certain information in the 8-K which may affect investors.  The real difference is that there was not gain for PUGE or Burkhardt.

There have been New York cases where courts have refused to assert personal jurisdiction.  For instance, in *Charas,* the court dismissed claims against a corporate director based on allegedly fraudulent registration statements that were filed with the SEC.  *Charas v. Sand Tech. Sys. Int'l, Inc* No. 90 Civ. 5638, 1992 U.S. Dist. LEXIS 15227 (S.D.N.Y. Oct. 7, 1992).  Finding that the director, a Japanese resident, "had no contacts with the United States" relating to his status as a director and that he had "not signed the registration statements at issue," the court held that the false registration statements – the corpus delicti – could not be "deemed the direct and foreseeable result" of the defendant's alleged misconduct in the discharge of his director duties.  *See Id.* at *16.  Thus, because there was no "significant causal relation" between the defendant's allegedly fraudulent activities and plaintiffs' claims, the court had no jurisdiction over him.  *See Id.*; *see also Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 490 (S.D.N.Y. 2011) (no jurisdiction where complaint "merely alleged that defendant . . . had the power, influence and authority and exercised the same to cause others to engage in the wrongful conduct and practices complained of'").

Even the cases above dealt with international individual Defendants outside the U.S., the factual and legal background is very similar to the case at hand.  Here, the single publishing, by the CEO of a small penny-stock company, which talks about the impact of several toxic loans the

8

company owes, should not impose a significant causal relation. Mr. Burckhardt's simply signing off the 8-K with no ulterior motive or financial gain cannot be a significant source of foreseeability that he can be forced to litigate in New York.

Plaintiff portrays Mr. Burckhardt as a 21st Century "Gordon Gekko"[2] who wrongfully benefited from financial gains in the transaction. However, as Plaintiff states, Mr. Burckhardt did not benefit any miniscule amount beyond his salary of $8,000.00/month, which Mr. Burckhardt stated at this deposition was not getting paid. Thus, besides fulfilling his duty with the company, shareholders, and the SEC, Mr. Burckhardt did not receive any personal benefit. **See excerpts of Mr. Burckhardt's deposition, showing that he did not have contacts with New York, and that he did not get paid consistent salary, attached as Exhibit "A."**

Accordingly, Plaintiff's attempt to mix its Corporate Veil Piercing Theory, by arguing that Burckhardt was a "controlling person" and that somehow his acts constituted enough contacts to confer jurisdiction fail completely. The deposition did not yield any such results and all that the Court is left with is the Plaintiff insistence, without judicial support, that personal jurisdiction exists. Moreover, Plaintiff's statements indicating that Burckhardt, at his deposition, did not provide an explanation to Responses to Requests for Production regarding company's meetings, minutes and resolutions, are not accurate. Defendants provided supplemental responses to those requests. In the abundance of caution, Defendants even sent Plaintiff counsel an Amended Response to Request for Production. **A copy of the emails from undersigned sending the supplemental responses and the Second Amended Responses are attached as Exhibit "B."**

---

[2] Gordon Gekko is a fictional character in the 1987 film Wall Street and its 2010 sequel Wall Street: Money Never Sleeps, both directed by Oliver Stone. The character was partly based on Bond trader Michael Milken, who was indicted on 98 counts of racketeering and fraud. *See* Wikipedia

Furthermore, as to Plaintiff's Defamation count must be dismissed because New York specifically precludes Jurisdiction of a foreign Defendant based on Defamation. Plaintiff cannot circumvent this by simply stating that Burckhardt is an alter-ego of PUGE, which the Deposition of Burckhardt revealed not to be true. New York's § 302 Long-Arm statute cannot have jurisdiction over a Defendant when these sections of § 302 does not apply with regard to out-of-state residents tortious action in cases of defamation. In the present case, even if Burckhardt committed a tort, this section of the statute would not apply in a defamation case.

## IV.     CONCLUSION

Plaintiff's Amended Complaint must be denied in its entirety. Plaintiff has been unable to prove all the Counts in the Complaint or that it would succeed on the merits. Complaint does not survive the standard imposed by Rules 8, 9, 12(b)2 and 12(b)6. Accordingly, Plaintiff's Amended Complaint should be dismissed.

Respectfully submitted,

By:     **/s/ Alex Funes**
Alex D. Funes, Esq.
Florida Bar No. 635340
Wash. DC Bar No.: 992045

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing has been sent via CM/ECF to Plaintiff's counsel on the Service List below on this 11th day of March, 2016.

      Respectfully Submitted,

BY:   /s/ Alex D. Funes
        Alex D. Funes, Esq.
        Florida Bar No. 635340
        Wash. DC Bar No.: 992045
        **The Funes Law Firm, P.A.**
        223 E. Flagler, Suite 606
        Miami, FL 33131
        T: (305) 731-2397
        F: (305) 503-8557
        E: funeslaw@gmail.com

Service List

Michael Steinmetz, Esq.
Garson, Segal, Steinmetz, Fladgate, LLP
164 West 25th Street, Suite 11R
New York, NY 10001
T: (212) 380-3623
F: (347) 537-4540
E: ms@gs2law.com

Alex D. Funes, Esq.
The Funes Law Firm, P.A.
223 E. Flagler, Suite 606
Miami, FL 33131
T: (305) 731-2397
F: (305) 503-8557
E: funeslaw@gmail.com

11